UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE 1228 INVESTMENT GROUP, L.P., | ) | CASE NO.: _____ **18    2336** |
| Plaintiff, | ) | |
| v. | ) | |
| CORNING INCORPORATED, | ) | JUDGE: _____ |
| Defendant. | ) | |

## NOTICE OF REMOVAL

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. § 1332, Defendant Corning Incorporated ("Corning") hereby removes the matter captioned *The 1228 Investment Group, L.P. v. Corning Incorporated*, Case No. 2018-12790, from the Court of Common Pleas, Montgomery County, Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania. This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure. In support of its Notice of Removal, Corning states as follows:

1. Plaintiff The 1228 Investment Group, L.P. ("Plaintiff") commenced this action by filing a Complaint against Corning on May 11, 2018, in the Montgomery County Court of Common Pleas. A copy of the Complaint is attached as Exhibit A.

2. Plaintiff's Complaint was served on Corning on or around May 14, 2018.

3. Thirty days have not yet expired since Corning received service of process. Accordingly, removal of this action is timely under 28 U.S.C. § 1446(b).

4. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1441 because complete diversity exists between the parties and the amount in controversy exceeds $75,000.

1

5. Plaintiff alleges that it is a Pennsylvania limited partnership. (Complaint at ¶ 1.)

6. Plaintiff's general partner is a resident of Pennsylvania.

7. Plaintiff is a citizen of Pennsylvania for diversity jurisdiction purposes.

8. Corning is a New York corporation that has its principal place of business in Corning, New York. (*Id.* at ¶ 3.)

9. Corning is a citizen of New York for diversity jurisdiction purposes.

10. As a result, the parties have diverse citizenship. *See* 28 U.S.C. § 1332(a).

11. In the Complaint, Plaintiff asserts a claim for breach of contract and alleges damages in the total amount of $238,325. (Complaint at ¶¶ 20, 24.)

12. As a result, this action satisfies the amount in controversy requirement for diversity jurisdiction. *See* 28 U.S.C. § 1332(a).

13. Written notice of the filing of this Notice for Removal will be given to the state court and all parties as provided by law.

FRANTZ WARD LLP

By: _____
Michael J. Frantz, Jr., Esq.
PA Attorney I.D. No. 204963
200 Public Square, Suite 3000
Cleveland, Ohio 44114
(216) 515-1660
(216) 515-1650 (Fax)

*Attorney for Defendant*

Dated: June 1, 2018

## CERTIFICATE OF SERVICE

A copy of the foregoing was sent for filing on June 1, 2018. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. A copy of the foregoing was also served, by regular U.S. mail, upon:

Michael J. Revness, Esq.
Kurtz & Revness, P.C.
Three Glenhardie Corporate Center
1265 Drummers Lane, Suite 209
Wayne, PA 19087

Attorney for Plaintiff

Attorney for Defendant

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

THE 1228 INVESTMENT GROUP LP

vs.

CORNING INCORPORATED

NO. 2018-12790

## NOTICE TO DEFEND - CIVIL

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY BAR ASSOCATION
100 West Airy Street (REAR)
NORRISTOWN, PA 19404-0268

(610) 279-9660, EXTENSION 201

PRIF0034
R 10/11

Exhibit A - Notice of Removal

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

THE 1228 INVESTMENT GROUP LP

vs.

CORNING INCORPORATED

NO. 2018-12790

## CIVIL COVER SHEET

State Rule 205.5 requires this form be attached to any document <u>commencing an action</u> in the Montgomery County Court of Common Pleas. The information provided herein is used solely as an aid in tracking cases in the court system. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.

Name of Plaintiff/Appellant's Attorney: MICHAEL REVNESS, Esq., ID: 62752

Self-Represented (Pro Se) Litigant [ ]

**Class Action Suit**      [ ] Yes   [X] No

**MDJ Appeal**  [ ] Yes   [X] No          **Money Damages Requested** [X]

<u>Commencement of Action</u>:          <u>Amount in Controversy</u>:

Complaint          More than $50,000

## Case Type and Code

Contract: _____

Other _____

**Other:**   BREACH OF CONTRACT

Case# 2018-12790-0 Docketed at Montgomery County Prothonotary on 05/11/2018 10:52 AM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2018-12790-0 Docketed at Montgomery County Prothonotary on 05/11/2018 10:52 AM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

KURTZ & REVNESS, P.C.
By:   Michael J. Revness, Esquire
Attorney I.D. No.:   62752
Three Glenhardie Corporate Center
1265 Drummers Lane, Suite 209
Wayne, PA 19087 (610) 688-2855      Attorneys for Plaintiff
mrevness@kandrlaw.com

| | |
|---|---|
| THE 1228 INVESTMENT GROUP, L.P., | COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PA |
| Plaintiff, | |
| v. | NO. |
| CORNING INCORPORATED, | |
| Defendant. | |

## CIVIL COMPLAINT

### *THE PARTIES/VENUE*

1.      Plaintiff is a Pennsylvania Limited Partnership with an address of P.O. Box 340, Gladywne, PA 19035 (hereinafter "Provider").

2.      Plaintiff is the assignee of all the Provider's ("Provider" is defined in ¶5, below) right, title and interest to the causes of action, claims and damages pled in this Complaint by virtue of that certain claim purchase agreement and related assignment made and entered into between Plaintiff and Provider (the "Claim Purchase Agreement").

3.      Defendant is a New York corporation with its principal place of business at One Riverfront Plaza, Corning, New York 14831 (hereinafter "Defendant").

4. Venue is appropriate in this Court and County, as: (i) the principal place of business of the Plaintiff and the Provider is in Montgomery County; (ii) the Defendant regularly conducts business in Montgomery County; and (iii) a transaction or occurrence out of which the cause of action which is the subject matter of this Complaint took place here in Montgomery County.

### BACKGROUND ON PROVIDER'S SERVICES

5. Provider (the IT Support Center, LLC) essentially operates as a "help desk" service to assist employees of its customers -- through real-time remote telephone and internet support assistance -- with computer software questions, problems and training on products owned and/or operated by its customers (referred to herein as the "Support Services" or "Services").

6. The Support Services of Provider are secured through a written contract in which a customer purchases, among other things, a contracted number of units for a specific price. The units are then used by the customer of Provider for Support Services (hereinafter the "Support Units"). That is, each time an employee of the customer calls Provider for Support Services, the customer is charged a certain number of Support Units based on the length of the call.

7. The written contract between Provider and its customer requires the customer to assure that its employees have direct access to Provider's Services during the term of the contract. One common method used is for the customer to maintain a help desk number at the customer's place of business with an audible menu option for "how-to" questions that directly transfers callers with "how-to" questions to the Provider.

### AGREEMENT BETWEEN PROVIDER AND DEFENDANT

8. Provider and Defendant are parties to that certain SUPPORT SERVICES AGREEMENT (the "Agreement"), a copy of which is attached as Exhibit "A."

Case# 2018-12790-0 Docketed at Montgomery County Prothonotary on 05/11/2018 10:52 AM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

9. Pursuant to Section 2.ii. of the Agreement, the Defendant contracted for a minimum monthly commitment of 1,522 Support Units at a cost of $5,000.00 per month (the "Monthly Commitment").

10. Defendant agreed that it would pay the Provider at $3.62 for each additional support Unit used above the Monthly Commitment (the "Additional Units") (*see Section 5 of the Agreement)*.

11. The Commencement Date of the Agreement *(as defined in Section 4 thereof)* was November 27, 2017 *(6 weeks from the October 18, 2017 date of the Agreement)*.

12. The Original Term of the Agreement *(as defined in Section 4 thereof)* was 365 days from the Commencement Date; up through November 27, 2018.

13. Defendant had an option to terminate the Agreement for convenience at any time during the initial 30-day period of the Original Term – up to and including December 27, 2017 (the "Termination for Convenience Option") (*see "NOTE" directly below signatures on page 3 of the Agreement)*.

14. The Defendant did not exercise the Termination for Convenience Option and, therefore, its right to terminate the Agreement for convenience expired after December 27, 2017.

15. In Section 8 of the Agreement, the Defendant agreed to assure that all its employees always had direct access to Provider's Services during the Original Term (the "Direct Access Mandate"). Specifically, the Defendant agreed as follows: *"During the term of this Agreement, Customer's employees shall have direct access to [Provider's] consultants via dialing an internal help desk number that either directly or via a dedicated phone menu option directly transfers all callers to [Provider] for the following support (note the Agreement below):*

    __X__    *"How-to" questions on off-the-shelf software applications*

## *DEFENDANT'S BREACHES OF THE AGREEMENT*

16. On or about March 14, 2018, the Defendant breached the Direct Access Mandate by removing the Provider from the Defendant's internal help desk number thereby denying its employees access to Provider's Services (the "First Breach").

17. After Provider notified the Defendant of the First Breach, the Defendant reinitiated Provider on the Defendant's internal help desk number on or about March 16, 2018 so that its employees would then again have access to Provider's Services pursuant to the Direct Access Mandate of the Agreement.

18. On or about April 10, 2018, the Defendant again breached the Direct Access Mandate by removing Provider from the Defendant's internal help desk number thereby again denying its employees access to Provider's Services (the "Second Breach").

19. As of this date -- and despite repeated demand -- the Defendant has failed and refused to reinitiate Provider on the Defendant's internal help desk number so that all its employees would have access to the Services of Provider pursuant to the Direct Access Mandate of the Agreement. Moreover, Defendant has notified Provider that it does not intent to reinitiate Provider on the Defendant's internal help desk number.

20. During the period of time that the Defendant honored the Agreement and the Direct Access Mandate (*26 days in total from March 12, 2018 to April 9, 2018, excluding the First Breach*), it was utilizing an average of 185 Support Units per day, equating to a total projected annual usage of 67,525 Support Units for the Original Term, at a total projected annual cost of $238,325.00 for the Original Term (*calculated based on 18,264 Support Units for the $60,000 Monthly Commitment, and 49,261 Additional Support Units @ $3.62 per unit for a total of $178,325.00*).

Case# 2018-12790-0 Docketed at Montgomery County Prothonotary on 05/11/2018 10:52 AM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## COUNT I – BREACH OF CONTRACT

21. Plaintiff incorporates here by reference the prior paragraphs of the Complaint, as it set forth fully herein.

22. The Agreement is a valid and binding contract between Provider and Defendant supported by adequate consideration.

23. The First Breach and Second Breach *(as defined in ¶¶ 16 and 18, above)* were both material breaches of the Direct Access Mandate of the Agreement.

24. As a consequence of the First Breach and Second Breach, and the section "Breach of Agreement" in the General Terms & Conditions, Provider has been damaged in the total amount of $238,325.00, as pled in ¶20, hereof, which the Plaintiff is entitled to recover pursuant to the Claim Purchase Agreement.

**WHEREFORE**, Plaintiff The 1228 Investment Group, LP respectfully requests judgment in its favor and against Defendant Corning Incorporated in the amount of $238,325.00, together with interest at 1.5% per month, legal fees and expenses pursuant to ¶ 5 of the Agreement and the General Terms & Conditions, and such other and further relief as this court deems just.

KURTZ & REVNESS, P.C.

_____
Michael J. Revness, Esquire
Three Glenhardie Corporate Center
1265 Drummers Lane, Suite 209
Wayne, PA   19087
T:  (610) 688-2855
F:  (610) 688-2912

## VERIFICATION

I, Jeffrey S. Becker, hereby verify as follows: (1) I am the General Partner of the Plaintiff; (2) the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief; and (3) I understand the foregoing statements are made subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.

_____
Jeffrey S. Becker

Case# 2018-12790-0 Docketed at Montgomery County Prothonotary on 05/11/2018 10:52 AM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2018-12790-0 Docketed at Montgomery County Prothonotary on 05/11/2018 10:52 AM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT A



 # Order Form - Support Services Agreement

Whereas theITSupportCenter, LLC., a Pennsylvania corporation with an address at One Tower Bridge, 100 Front Street, Suite 200, West Conshohocken, PA 19428 (hereinafter referred to as "ITSC") provides IT support assistance on products that are owned and operated by its customers through remote support with technical support advisors, and

Whereas Corning Incorporated (hereinafter referred to as "Customer") desires to retain ITSC to furnish services on the terms and conditions hereinafter set forth,

Now therefore, in consideration of the foregoing recitals and for good and valuable consideration, the receipt and sufficiency of which is acknowledged, and intending to be legally bound hereby, ITSC and Customer, this ___18th___ day of October, 2017 agree as follows:

**1) Services to be provided:** ITSC will furnish to Customer IT support assistance and documentation of the support provided for products owned and operated by the Customer.

**2) Fees:** Customer agrees to pay the fees set forth below.

  **i. Startup Fee:** In order to cover account activation, PBX programming, testing, network configuration expenses and other costs associated with the startup of Customer's account, a one-time startup fee of $WAIVED is assessed to Customer.

  **ii. Support Fees:** Support assistance is provided through units of support services. These units are used to purchase the services of ITSC. Customer has contracted for a monthly commitment of __1,522__ units of support services at a cost of __$5,000__. Support is provided on-line or off-line. On-line support consists of immediate technical support provided on a real time basis. Off-line support consists of technical support and research which is provided on a non-real time basis. Units of support service charges are calculated based on the following formula:

**On-line Support:**
Service Length                      Rate is calculated as follows
first 5 minutes or part thereof     1 unit per minute
minutes 6 to 10                     .98 units per minute
minutes over 10                     .96 units per minute

**Off-line Support:**
All off-line support is calculated at the rate of .95 units for the length of support.

| Enhanced Services | Quantity | Start-up Cost | Ongoing Cost |
|---|---|---|---|
| After Hours Support* | Unlimited use | WAIVED | Waived for Original Term, cost based on 45,000 PCs |
| WebSupport | Unlimited use | WAIVED | Waived for Original Term, cost based on 45,000 PCs |
| Customized Greeting | Unlimited use | WAIVED | Waived for Original Term, cost based on 45,000 PCs |
| VIP Notification | Unlimited use | WAIVED | Waived for Original Term, cost based on 45,000 PCs |
| Client Web Monitoring | Unlimited use | WAIVED | Waived for Original Term, cost based on 45,000 PCs |

* Excludes 25% premium for support calls received outside of standard hours of 8:30am to 8:30pm Eastern, Monday through Friday, activated upon request by Customer.

**3) Reports:** ITSC will debit Customer's account for all units used. Customer will be provided with a monthly report showing the current status of their account.

**4) Term:** The term of this Agreement shall commence upon the earlier of (i) the date of the first support call placed by Customer to ITSC, which shall be no earlier than 4 weeks from the date of this Agreement, or (ii) 6 weeks from the date of this Agreement (the "Commencement Date"). The term of this Agreement shall continue for a period of 365 days from the Commencement Date ("Original Term"). This Support Services Agreement will automatically renew, for periods of duration equal to the duration of the Original Term ("Renewal Term"), unless either party notifies the other in writing not less than 30 days prior to the expiration of the term or any Renewal Term. In the event that all units contracted for during the Original Term or during any Renewal Term have not been utilized by the completion of the Original Term or any Renewal Term, Customer will be permitted to carry over all

Case# 2018-12790-0 Docketed at Montgomery County Prothonotary on 05/11/2018 10:52 AM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



unused units, but not more than 15% of the units described in Paragraph 2 of this Agreement, into a Renewal Agreement of equal or greater size, provided that no lapse of service occurs.

5) **Billing:** On a monthly basis ("Billing Cycle"), at the start of and during the Original Term of this Agreement and any Renewal Term, Customer shall be invoiced for units, or additional units, of support as described above, at the then current pricing. Customer agrees to pay the full cost of invoiced services, pursuant to this Support Services Agreement, within 45 days following receipt of invoice. Invoices not paid by their due date shall be subject to a 1.5% per month interest fee compounded monthly, or the maximum extent allowed by applicable laws, whichever is less, on all past due balances. In the event ITSC incurs any additional fees or expenses as a result of the enforcement of this Agreement, such as collection agencies or legal fees, ITSC shall be entitled to reimbursement for any and all such fees and expenses.

In the event that all monthly units described in paragraph 2, above, are exhausted prior to the end of a Billing Cycle, ITSC agrees to bill Customer for additional support units consumed ("Gap Amount") in arrears at a rate of $3.62 per unit ("Gap Amount Rate") until the next Billing Cycle. Notwithstanding the foregoing, ITSC agrees to bill Customer at a discount of 10% to the Gap Amount Rate for the first 3 Billing Cycles that Customer requires a Gap Amount.

6) **CRM Administration:** ITSC agrees to configure and program its CRM system to document and track support provided for Customer requests at a cost of **WAIVED** units per month.

Alternatively, upon request by Customer, ITSC may learn and use Customer's CRM system to document and track support requests. Customer will pay ITSC a training and monitoring fee of ____ units each month for using Customer's CRM, based on the following:

| Number of Personal Computers | Unit cost per month |
|---|---|
| Under 500 | 128 |
| 500 - 2,499 | 171 |
| 2,500 - 4,999 | 231 |
| 5,000 - 9,999 | 286 |
| 10,000 - 14,999 | 344 |
| 15,000 - 24,999 | 389 |
| 25,000 + | 493 |

In addition, Customer agrees to pay ITSC a one-time setup and configuration fee for the use of Customer's CRM system of $1,750.

7) **Telecommunications:** Customer will access ITSC via dedicated support lines provided by ITSC at a cost of $200 per quarter per dedicated line.

8) **Caller Access:** During the term of this Agreement Customer's employees shall have direct access to ITSC's consultants via dialing an internal help desk phone number that either directly or via a dedicated phone menu option directly transfers all callers to ITSC for the following support *(note the Agreement below)*:

__X__   "How-to" questions on off-the-shelf software applications

_____   Select Customer-specific support topics and software applications

_____   All Tier One, general IT service desk issues

9) **Miscellaneous:**
(a) Entire Agreement. This Agreement constitutes the entire agreement between the parties, and supersedes all prior agreements, representations and understandings of the parties, written or oral.

(b) Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same agreement.

(c) Amendment and Additional Terms. This Agreement may be amended only by a written, executed agreement of the parties. Any terms and conditions of any attachment, purchase order or other document submitted by Customer in connection herewith that are in addition to, different from or inconsistent with this Agreement are not binding on ITSC and are ineffective unless executed by both parties.

(d) No Waiver of Rights. A failure or delay in exercising any right, power or privilege in respect of this Agreement will not be presumed to operate as a waiver, and a single or partial exercise of any right, power or privilege will not be presumed to preclude

Case# 2018-12790-0 Docketed at Montgomery County Prothonotary on 05/11/2018 10:52 AM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



any subsequent or further exercise, of that right, power or privilege or the exercise of any other right, power or privilege.

(e) Severability. If any provisions of this Agreement shall be unenforceable or invalid, such unenforceability or invalidity shall not affect the remaining provisions of this Agreement.

(f) Breach of Agreement. In the event ITSC incurs any legal fees or expenses as a result of the enforcement of this Agreement, ITSC shall be entitled to reimbursement for any and all such reasonable legal fees and expenses.

By signing below, Customer accepts the services described in this Support Services Agreement, understands and agrees to the ITSC General Terms and Conditions, a copy of which may be found enclosed below.

Corning Incorporated
By: *Kimberly S. Hamilton*
1 Riverfront Plaza    10/18/17
Corning, NY 14831

theITSupportCenter, LLC
By: _____
One Tower Bridge
100 Front Street, Suite 200
West Conshohocken, PA 19428

NOTE: During the initial 30 day period of the Original Term of this Agreement, Customer may terminate the Agreement at any time for convenience with written notice and receive a full refund of any unused units.

Case# 2018-12790-0 Docketed at Montgomery County Prothonotary on 05/11/2018 10:52 AM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2018-12790-0 Docketed at Montgomery County Prothonotary on 05/11/2018 10:52 AM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



One Tower Bridge
100 Front Street, Suite 200
West Conshohocken, PA 19428
T: 215-375-7280 | F: 610-228-8203
www.theitsupportcenter.com



## General Terms & Conditions

**ITSC Performance and Limitation of Liability:** ITSC will exercise its commercially reasonable efforts to provide information and support services requested by Customer in an expeditious and efficient manner but ITSC shall have no obligation or liability to Customer for any delay or failure of ITSC in its performance hereunder. ITSC does not represent, warrant or guarantee that any of the support services provided hereunder will correct or solve any error or problem within any specific time period. Neither ITSC nor its officers, directors, shareholders, employees, agents or suppliers shall be liable to Customer or any third party for any claim, injury or damage arising or alleged to arise out of the services performed by ITSC under this Support Services Agreement.

**Updated Technical Library:** ITSC will use its commercially reasonable efforts to regularly update and enhance its technical libraries so that it can provide the most current technical information related to products being serviced by ITSC.

**No Distribution of Support Information:** Support and information provided under this Support Services Agreement is for the exclusive use of Customer and its employees. Reproduction or distribution of the information provided by ITSC to anyone outside of the Customer organization, whether or not for profit, is strictly prohibited without the express written permission of authorized personnel from ITSC. Customer understands and agrees that ITSC exclusively owns all technical solutions developed or identified in providing support services under this Agreement.

**Confidentiality:** ITSC agrees that it will maintain the confidentiality of any information related to Customer's business which is provided to ITSC during the course of ITSC providing services hereunder. ITSC will not disclose any Confidential Information of the Customer to parties other than its employees or agents under appropriate burden of confidentiality and who are required to have the information in order to carry out the services described above. ITSC agrees that it will take all reasonable measures to protect the secrecy of and avoid disclosure or use of Confidential Information of the Customer in order to prevent it from falling into the public domain or the possession of persons other than those persons authorized under this Agreement to have any such information. Such measures shall include the highest degree of care that ITSC utilizes to protect its own Confidential Information of a similar nature. ITSC agrees to notify the Customer of any misuse or misappropriation of Confidential Information of the Customer, which may come to ITSC's attention.

**Customer Account & Access Number Security:** Customer is solely responsible for disseminating its account access number to authorized employees, maintaining the security of the access number and instructing its employees concerning its access policy. In consideration of the effort and expense to be incurred by ITSC in setting up Support Service, during the Term of this Agreement Customer agrees to exclusively utilize ITSCs Services and not to enter into any other agreement or arrangement for a similar service. Customer shall be responsible for all usage resulting from use of its access number. ITSC will change the access number upon written request from Customer.

**After Hours Support:** Standard support hours are from 8:30 a.m. to 8:30 p.m. Eastern Standard Time, Monday through Friday. Unit charges for support provided outside of the standard support hours will be calculated at a twenty five percent (25%) premium to the methodology as detailed in paragraph 2 of the Support Services Agreement.

In addition, Customer will pay ITSC an after-hours monitoring fee of $_____ per quarter for maintaining after hours support coverage based on the following formula (not applicable to international coverage):

| Number of Personal Computers | Cost per Quarter | Number of Personal Computers | Cost per Quarter |
|---|---|---|---|
| Under 500 | $300 | 5,000 to 9,999 | $750 |
| 500 to 2,499 | $450 | 10,000+ | $900 |
| 2,500 to 4,999 | $600 | | |



**WebSupport:** Customer will be granted web access to ITSC's servers to enable the viewing of the tech advisor's desktop from the caller's screen. Customer will pay ITSC _____ units each quarter for maintaining WebSupport services based on the following (excluding international callers):

| Number of Personal Computers | Unit cost per quarter | Number of Personal Computers | Unit cost per quarter |
|---|---|---|---|
| Under 500 | 170 | 10,000 - 14,999 | 737 |
| 500 - 2,499 | 371 | 15,000 - 24,999 | 895 |
| 2,500 - 4,999 | 478 | 25,000 + | 1,071 |
| 5,000 - 9,999 | 589 | | |

**Discount Rate:** ITSC agrees to provide Customer the most competitive discount rate associated with the payment terms referenced in the Billing Section of the Support Services Agreement, including the advancement of bonus support units as included in the Fees Section, of the aforementioned Agreement, that are contingent upon the aforementioned payment terms. If Customer's payment is inconsistent with the terms referenced in the Billing Section of the Support Services Agreement, the bonus support units will be debited, though Customer will still receive the most competitive discount rate associated with the new payment terms.

**Customized Greeting:** Each call received by ITSC, from Customer, will begin with the Customer's directed custom greeting to seamlessly integrate ITSC's service into the Customer's Help Desk.
Customer will pay ITSC a programing and maintenance fee of _____ units each quarter for maintaining the customized greeting, based on the following (excluding international callers):

| Number of Personal Computers | Unit cost per quarter | Number of Personal Computers | Unit cost per quarter |
|---|---|---|---|
| Under 500 | 178 | 10,000 - 14,999 | 374 |
| 500 - 2,499 | 221 | 15,000 - 24,999 | 439 |
| 2,500 - 4,999 | 271 | 25,000 + | 539 |
| 5,000 - 9,999 | 316 | | |

**"VIP" Notification:** ITSC will pre-program into its CRM system the names, titles, and email addresses of VIPs within Customer's organization as directed by Customer for priority call handling by ITSC. Priority call handling may include immediate notification to Customer's Help Desk after a VIP has contacted ITSC or immediate notification to the Customer's Help Desk Manager after a VIP has received support.
Customer will pay ITSC a fee of _____ units each quarter for maintaining the "VIP" Notification feature, based on the following:

| Number of Key Users | Unit cost per quarter | Number of Key Users | Unit cost per quarter |
|---|---|---|---|
| 25 or under | 86 | 51 to 75 | 122 |
| 26 to 50 | 103 | 76 to 100 | 146 |

**Client Web Monitoring:** Customer will be granted remote access, via the web, for call activity on Customer's account.
Customer will pay ITSC $_____ per month for maintaining this access (billed quarterly), based on the following (excluding international callers):

| Number of Personal Computers | Cost per month | Number of Personal Computers | Cost per month |
|---|---|---|---|
| Under 500 | $32 | 10,000 - 14,999 | $240 |
| 500 - 2,499 | $40 | 15,000 - 24,999 | $300 |
| 2,500 - 4,999 | $150 | 25,000 + | $340 |
| 5,000 - 9,999 | $220 | | |

**Miscellaneous:**
Notices. All notices, demands and other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been properly given if delivered by hand or by Federal Express or United Parcel Service courier or by registered or certified mail, return receipt requested, with postage pre-paid, to ITSC or Customer, as the case may be, at their addresses first above written, or at such other addresses as they may designate by notice given hereunder.

Breach of Agreement. In the event ITSC incurs any legal fees or expenses as a result of the enforcement of this Agreement, ITSC shall be entitled to reimbursement for any and all such reasonable legal fees and expenses.

Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without regard to its conflict of laws rules. The parties hereto agree that all actions or proceedings arising in connection with this Agreement shall be tried and litigated exclusively in the State and Federal courts located in the Counties of Montgomery and Philadelphia, Commonwealth of Pennsylvania. The aforementioned choice of venue is intended by the parties to be mandatory and not permissive in nature, thereby precluding the possibility of litigation between the parties with respect to or arising out of this Agreement in any jurisdiction other than that specified in this paragraph.